**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Robert Lawrence,                          )   No. CV 04-1553-PHX-NVW
                                          )
           Plaintiff,                     )   **ORDER**
                                          )
vs.                                       )
                                          )
                                          )
Motorola, Inc., et al.,                   )
                                          )
           Defendant.                     )
                                          )
_____   )

The court has before it Plaintiff's Motion for a Review De Novo, Doc. # 36; Plaintiff's Statement of Facts in Support of his Motion, Doc. # 37; Defendants' Response to Plaintiff's Motion, Doc. # 41; Defendants' Response to Plaintiff's Statement of Facts, Doc. # 41, Attachment # 1; Defendants' Statement of Facts, Doc. # 42; and Plaintiff's Reply, # 51.

In April 2000, Plaintiff ("Lawrence") filed a claim for disability benefits with his employer, Motorola, Inc. ("Motorola"), to receive disability benefits under the Motorola Disability Income Plan ("Plan").  Lawrence received disability benefits until January 14, 2003, at which point Motorola terminated Lawrence's disability benefits because (1) Lawrence had failed to attend two Independent Medical Examinations ("IMEs") and (2) Lawrence had failed to provide objective medical evidence establishing his disability. Lawrence appealed and on November 10, 2003, Motorola upheld its initial denial on the ground that Lawrence failed to establish his claimed disability with objective medical

1   evidence.  Lawrence brought this action pursuant to the Employee Retirement Income
2   Security Act of 1974 ("ERISA").  29 U.S.C. § 1132(a)(1)(B).

3       The issue before the court is the proper standard of review for determining whether
4   Motorola erred by denying Lawrence's disability claim.  Lawrence argues that the
5   appropriate level of review is de novo while Motorola argues that abuse of discretion should
6   be the reviewing standard.  Lawrence conducted discovery on the issue of whether Motorola
7   acted under a conflict of interest.

8   **I.    Statement of Facts**

9       **A.    Lawrence's Claim**

10      Lawrence has worked at Motorola for over twenty years,  Plaintiff Statement of Facts
11  ("PSOF") at ¶ 2, and was eligible for the Motorola Disability Income Plan.  Defendants
12  Response to Plaintiff's Statement of Facts ("DRTPSOF") at 2 (responding to PSOF at ¶ 3).
13  In July 1997, Lawrence began receiving short-term disability benefits.  PSOF at ¶ 4.  On
14  January  29, 1998, Lawrence was released for work.  DSOF at 2.

15      In April 2000, Lawrence stopped working and applied for disability.  PSOF at ¶ 6.
16  Lawrence alleged that he was suffering from a combination of abdominal pain, leg pain, neck
17  pain, headaches, recurring neuromas, degenerative disc disease, hernia repairs with mesh
18  wiring, multiple inguinal herniorrhaphies, painful staples, degenerative disc disease of the
19  knees, depression, and medication side effects.  PSOF at ¶ 11.  Three of Lawrence's treating
20  doctors–Dr. Gerald Wolfley, Dr. Herbert Goodman, and Dr. James Gough–have opined that
21  Lawrence is disabled.  Defendants  Response to Plaintiff's Statement of Facts ("DRTPSF")
22  at 6-7 (responding to PSOF at ¶ 12).

23      Lawrence received short-term benefits from April 2000 to October 2000 and received
24  long-term benefits from October 20, 2000 through December 31, 2000.  PSOF at ¶ 23.  At
25  some point in early 2001, Motorola denied Lawrence's claim because a CORE physician
26  believed that, based on a conversation he had with Dr. Wolfely, Lawrence was not disabled.
27  DSOF at ¶ 17.  Lawrence submitted the treating records of two of his treating doctors,
28  including Dr. Wolfely, who opined that he was disabled, and Motorola reinstated benefits on

1   March 8, 2001.  DSOF at ¶ 17.   Lawrence continued to receive long-term benefits until
2   January 14, 2002, when, according to Motorola, Lawrence failed to provide documentation
3   of a continuing disability.  DSOF at ¶ 18.  On January 21, 2002, Motorola reinstated benefits
4   through August 31, 2002.  DRTPSOF at 14 (referring to PSOF at ¶ 23).  Lawrence continued
5   to receive benefits until January 14, 2003, at which point Motorola terminated Lawrence's
6   disability benefits because (1) Lawrence failed to provide objective medical evidence
7   establishing a disability and (2) Lawrence missed two schedule IMEs.  On November 10,
8   2003, Motorola upheld its initial denial because of a purported lack of objective medical
9   evidence establishing Lawrence's disability.   DSOF at ¶ 29.

10      Lawrence filed a claim with the Social Security Administration, claiming that his
11  various ailments and related pain rendered him disabled and unable to perform any
12  occupation.  The Social Security Administration approved Lawrence's disability claim.
13  PSOF at  ¶ 18.

14      **B.     The Motorola Disability Income Plan**

15      Motorola is the designated administrator and fiduciary of the Plan.  DSOF at ¶ 4.
16  Section 10.1 of the Plan expressly provides that Motorola delegates its administrative
17  authority to an Administrative Committee, whose members–one or more–are appointed by
18  the Compensation Committee of the Board of Directors of Motorola.  DSOF at ¶ 5.  Section
19  10.8 of the Plan provides that the Administrative Committee has the authority to designate
20  other persons to carry out all or a specified part of its responsibilities.  DSOF at ¶ 8.  Section
21  2.19 of the Plan provides that the "Motorola Disability Management Program" is an
22  independent disability management organization retained to certify a treating physician's
23  opinion.  DSOF at ¶ 8.   The Plan then identifies CORE, Inc. as the Motorola Disability
24  Management Program.  During the determination of Lawrence's claim, Mutual of Omaha
25  replaced CORE as Motorola's independent disability management organization.  PSOF at ¶
26  26.  When CORE or Mutual of Omaha cannot make a disability determination, the claim is
27  referred to the named fiduciary designated by Motorola to make a claim determination.
28  PSOF at ¶ 26.

1    At oral argument on May 12, 2006, Motorola stated that CORE makes the initial

2    disability determination without review by anyone at Motorola.  At the appeal level,

3    however, a designated person at Motorola reviews CORE's disability recommendation and

4    reviews the claimant's entire medical file.

5    **II.    Standard of Review**

6        **A.    Standard for Summary Judgment**

7        To defeat a motion for summary judgment, the opposing party must set forth specific

8    facts showing that there is a genuine issue of material fact in dispute.  Fed. R. Civ. P. 56(e);

9    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A dispute about a material fact

10   is genuine "if the evidence is such that a reasonable jury could return a verdict for the

11   nonmoving party."  *Id.* at 248 (1986).  In the absence of such facts, "the moving party is

12   entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

13   (1986) (citations omitted).

14       The party seeking summary judgment bears the initial burden of informing the court

15   of the basis for its motion, and identifying those portions of the pleadings, depositions,

16   answers to interrogatories, and admissions on file, together with the affidavits, if any, which

17   it believes demonstrate the absence of any genuine issue of material fact.  *Id.*  Summary

18   judgment is appropriate against a party who "fails to make a showing sufficient to establish

19   the existence of an element essential to that party's case, and on which that party will bear

20   the burden of proof at trial."  *Id.* at 322.  Although the initial burden is on the movant to show

21   the absence of a genuine issue of material fact, this burden may be discharged by indicating

22   to the court that there is an absence of evidence to support the nonmoving party's claims.  *See*

23   *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001).  When

24   parties file cross motions for summary judgment, a court must determine whether summary

25   judgment for either party is appropriate.  *Fair Housing Council of Riverside County, Inc. v.*

26   *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

27

28

1

### B.   Standard of Review for Denial of Benefits

2   "A denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de*

3   *novo* standard unless the benefit plan gives the administrator or fiduciary discretionary

4   authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*

5   *Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).   If the plan provides such

6   discretionary authority to the administrator or fiduciary, the standard of review is abuse of

7   discretion.  *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1321 (9th Cir. 1994).

8   However, if an affected beneficiary produces material, probative evidence, beyond

9   the mere fact that an apparent conflict exists, that the plan administrators were breaching

10  their fiduciary duty, a presumption arises that the administrator breached its fiduciary

11  obligations to the beneficiary.  *Hensley v. Northwest Permanente P.C. Retirement Plan &*

12  *Trust*, 258 F.3d 986, 995 (9th Cir. 2001).  "[M]aterial, probative evidence may consist of

13  inconsistencies in the plan administrator's reasons, insufficiency of those reasons, or

14  procedural irregularities in the processing of the beneficiaries claims," *Nord v. Black and*

15  *Decker Disability Plan*, 356 F.3d 1008, 1010 (9th Cir. 2004), as well as the failure to provide

16  a claimant with a full and fair hearing.  *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th

17  Cir. 1999).  Where a plaintiff meets his initial burden, the administrator "must rebut the

18  presumption by producing evidence to show that the conflict of interest did not affect its

19  decision to deny or terminate benefits." *Hensley*, 258 F.3d at 995.  If the administrator fails

20  to rebut the presumption, the district court reviews the administrator's decision to deny

21  benefits under the de novo standard." *Id.*

22  ### III.   Analysis

23  The Plan provides that it shall have discretion in determining eligibility benefits.

24  DSOF at ¶ 11. ("The Committee shall have discretionary authority to grant or deny benefits

25  under the Plan.  Benefits under the plan will be paid only if the Committee decides in its

26  discretion that the applicant is entitled to them.").  Lawrence does not dispute that the Plan

27  confers discretion to the Administrator.  The standard of review is therefore abuse of

28

1    discretion unless Lawrence can produce material, probative evidence that the plan

2    administrators breached their fiduciary duties.

3         Lawrence presents four arguments for why Motorola's decision to terminate

4    Lawrence's long-term disability benefits should be reviewed de novo review rather than for

5    an abuse of discretion.   Those arguments include: (1) Motorola's failure to exercise

6    discretion, (2) the fact that Motorola decides disability claims and pays benefits, (3) the

7    presence of procedural ERISA violations, and (4) evidence demonstrating a conflict of

8    interest.

9         Lawrence presents multiple other arguments that, while perhaps relevant to whether

10   Motorola properly decided Lawrence's claim, are not relevant to whether Motorola breached

11   its fiduciary duty.   They are therefore not considered at this point.   In addition, only

12   Lawrence's adequately-explained arguments are addressed.

13        **A.     Motorola Failed to Exercise Discretion**

14        If an administrator completely declines to exercise discretionary authority by not

15   making a decision on a claim, then de novo review may be appropriate.   *See Seman v. FMC*

16   *Corp. Plan for Hourly Empls*, 334 F.3d 728, 733-34 (8th Cir. 2003) (administrator failed

17   to review an appeal from an initial denial even though claimant submitted additional medical

18   evidence on appeal).   In addition, if an administrator fails to reach an issue, de novo review

19   will also apply to the determination of that issue.   *See Mansker v. TMG Life Ins. Co.*, 54 F.3d

20   1322, 1327-28 (8th Cir. 1995).   In *Mansker*, the administrator had denied Mansker's claim,

21   finding that Mansker's injury arose out of his employment, which disqualified him under the

22   policy, and therefore did not reach the issue of reasonableness and customariness of the

23   medical expenses.   *Id.* at 1325.   The district court concluded that (1) Mansker's injury did not

24   arise out of his employment and (2) the medical expenses submitted by Mansker were

25   reasonable and customary.   *Id.*   TMG challenged the district court's decision to determine the

26   reasonableness and customariness of the medical expenses when the administrator had

27   discretion and had not decided that issue.   *Id.* at 1327-28.   The court rejected TMG's

28   argument, holding that when an administrator does not reach an issue, a district court should

1  use de novo review to decide that issue–in that case, the reasonableness and customariness

2  of the medical expenses.  *Id.*

3      While Lawrence attempts to couch his argument as one demonstrating Motorola's

4  failure to exercise discretion, the only case that Lawrence cites is *Mansker*, which, as

5  discussed above, is inapposite.  Lawrence is not arguing that Motorola failed to decide his

6  claim or failed to determine an issue.  Rather, Lawrence is claiming that some of Motorola's

7  internal policies resulted in an inadequate review of his claim.  Thus, Lawrence has failed

8  to establish the applicability of *Mansker* to the facts of his case.

9      Lawrence does not cite any cases nor argue that Motorola improperly delegated its

10 authority to an outside entity.

11     **B.    Motorola's Apparent Conflict of Interest**

12     Lawrence argues that the fact that Motorola is both the decision-maker and the payor

13 establishes a conflict of interest.   That is not the law in this Circuit.  *See Atwood*, 45 F.3d at

14 1323 (holding that the mere fact that an administrator is both the decision-maker and the

15 payor, creating an inherent and apparent conflict of interest, is insufficient to create a conflict

16 of interest that would alter the standard of review).

17     **C.    ERISA Violations**

18     Lawrence argues that Motorola violated ERISA by (1) not turning over Lawrence's

19 administrative record; (2) failing adequately to inform Lawrence how to perfect his claim;

20 and (3) permitting a Motorola employee to be involved in both the initial denial and the

21 appellate denial.

22     Violating ERISA's procedural regulations may justify a non-deferential standard of

23 review.  *See Gatti v. Reliance Std. Life Ins. Co.*, 415 F.3d 978, 984 (9th Cir. 2005); *see also*

24 *Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1108

25 (9th Cir. 2003).  However, merely establishing that an employer violated ERISA will not

26 alter the standard of review.  Rather, the *Gatti* court held that "[p]rocedural violations of

27 ERISA do not alter the standard of review unless those violations are so flagrant as to alter

28

1   the substantive relationship between the employer and the employee, thereby causing the
2   beneficiary substantive harm." *Gatti*, 415 F.3d at 985.

3                       **1.     Failure to Turn Over Records**

4           The Regulations provide that a benefit plan must establish an appeal procedure that
5   enables claimants to have a "reasonable opportunity to appeal an adverse benefit
6   determination." 29 CFR 2560.503-1(h).  In order to provide a claimant with a full and fair
7   hearing, the administrator must provide the claimant with "all documents, records, and other
8   information relevant to the claimant's claim for benefits." 29 CFR 2560.503-1(h)(2)(iii). A
9   document is "relevant" if it was "relied upon in making the benefit determination" or "[w]as
10  submitted, considered, or generated in the course of making the benefit determination,
11  without regard to whether such document, record, or other information was relied upon in
12  making the benefit determination." 29 CFR 2560.503-1(m)(8).

13          On March 13, 2003, following the initial denial, Lawrence asked for his administrative
14  record.  Doc. # 51, Appendix 1.  On April 3, 2002, Motorola provided Lawrence with an
15  incomplete record.  Doc. # 51, Appendix 1A.  On July 11, 2003, Lawrence again asked
16  Motorola for a complete administrative record. Doc. # 51, Appendix 1A.  While Lawrence's
17  counsel averred that he did not receive certain portions of the administrative record, Doc. #
18  51, Appendix 1 (providing a list of all the pages that Motorola failed to turn over to
19  Lawrence), at oral argument, Lawrence failed to confirm which "relevant" documents he did
20  not receive.  When asked whether Lawrence had received the medical opinions which
21  Motorola had relied on to make its January 30, 2003 decision to deny Lawrence's disability
22  request, Lawrence stated that he did not know.

23          Motorola asserts that its failure to turn over a complete administrative record did not
24  result in substantive harm to Lawrence.  In his brief, Lawrence never clearly discussed *Gatti*
25  or what substantive harm he suffered as a result of Motorola's failure to provide a complete
26  administrative record.  Moreover, when provided the opportunity at oral argument, Lawrence
27  failed to argue convincingly that he was substantively harmed.  Instead, Lawrence merely
28  asserted, without explanation, that he was substantively harmed because he did not receive

the IME reports which occurred during the appeals period.  Such an assertion without more is insufficient to establish substantive harm under *Gatti*.

Lawrence also cites a document in the administrative record as additional evidence demonstrating that Motorola willfully violated ERISA by trying to prevent the disclosure of certain documents.  Lawrence argues that the document was classified as "confidential" and contained the phrase  "not to release to Robert Lawrence."  The cited document, Tr. at 443, stated: "Do NOT release to client."  Despite Lawrence's assertion to the contrary, there is no indication that Lawrence was the "client."  However, even assuming that this document demonstrates that Motorola failed to provide Lawrence with a complete administrative record, Lawrence still fails to argue how he was substantively harmed.

Therefore, as discussed above, while Motorola may have violated ERISA by failing to provide Lawrence with a complete administrative record, Lawrence has failed to establish that he suffered any substantive harm as a result of Motorola's violation of ERISA.[1]

### 2.      Denial Notifications

A plan administrator must provide in its notification denying benefits: (1) the specific reasons for the adverse benefit determination; (2) a reference to the specific plan provisions on which the determination is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.  29 CFR 2560.503-1(g).

Lawrence has failed to explain how any alleged ERISA violations in Motorola's pre-January 15, 2003 letters caused him substantive harm.  After all, Lawrence received

---

[1]At the merits stage of the inquiry, Lawrence may be entitled to monetary relief under 29 U.S.C. § 1132(c)(1) (awarding one hundred dollars per day to the beneficiary when the administrator fails to furnish documents within thirty days of receiving the request).

disability benefits until January 14, 2003.[2]  It was on January 15, 2003, that Motorola denied Lawrence's claim because of a lack of objective medical evidence and Lawrence's failure to attend an IME.  Tr. at 205-07.  In that letter, Motorola stated its reasons for denying Lawrence's benefits claim, cited the relevant provisions of the plan, explained that Lawrence needed to submit objective medical evidence, and provided a description of the Appeals Process.  Lawrence's argument that Motorola's denial letter failed to comport with 29 CFR 2560.503-1(g) is groundless.  Lawrence does not argue that any other post-January 15, 2003 letters failed to comport with the Regulations.

### 3.    Cindy Myers's Role

Lawrence argues that Cindy Myers's involvement in Lawrence's claim violated 29 CFR § 2560.503-1(h)(3)(ii).  This Regulation provides that the person determining an appeal cannot be the person who made the initial adverse determination that is the subject of the appeal.

This provision does not apply to Myers.  While she processes claims and appeals for Motorola, she is not responsible for making claim determinations.  DSOF at ¶ 9.  Nothing in the record undermines this conclusion.

### D.    Conflict of Interest

Lawrence argues that Motorola acted under a conflict of interest when deciding his benefit request.  In this vein, Lawrence argues (1) that Motorola failed to follow its internal procedures, (2) he was improperly required to submit objective medical evidence, and (3) Motorola's practice of approving and denying benefits demonstrated that it was intent on denying Lawrence's claim.

### 1.    Failure to Follow Internal Protocol

On September 11, 2003, Dr. Prince examined Lawrence and concluded that he did not suffer from a disabling mental condition but that Lawrence's chronic pain appeared to be

---

[2]Lawrence states that he did not receive benefits between September 12, 2002 and January 14, 2003, but Motorola submitted evidence establishing that Lawrence received payments during that period.  See Doc. 42, Exhibit C and Exhibit 1.

1   physically disabling. DSOF at ¶ 27. Following Dr. Prince's report, Mutual of Omaha

2   recommended that Motorola pay Lawrence disability until he went to his next IME. PSOF

3   at ¶ 28. Specifically, the Mutual of Ohio employee stated: "I would reinstate his benefits,

4   based on a physical disability and set him up for a physical exam in the interim. Please

5   advise if you agree." In a subsequent e-mail, the employee stated: "To give the person the

6   benefit of the doubt, I would approve him (conditionally if you can) based on a physical

7   disability and immediately proceed with a physical IME." Tr. at 131. Motorola declined to

8   do so.

9       Lawrence argues that Motorola violated established protocol by rejecting Mutual of

10  Omaha's recommendation that Lawrence's disability benefits be extended through the

11  October IME. In Defendants' Response to Plaintiff's Statement of Facts, Defendant admitted:

12
13      Defendant contracted with CORE and later Mutual of Omaha to assist with disability
        determinations. Pursuant to Defendant's confidential policies and procedures related
        to Mutual of Omaha, Mutual of Omaha is to determine whether it can certify disability
14      for eligible beneficiaries. If Mutual of Omaha cannot certify disability, then the
        matter is referred to Motorola for disability determination purposes (Appendix 4, p.
15      01179).

16  DRTPSOF at 16-17 (referring to PSOF at ¶ 26). Thus, the question is whether these e-mail

17  recommendations constitute certification of Lawrence's disability. Given the equivocal

18  language, Mutual of Omaha was not certifying the presence of a disability. Motorola

19  therefore did not violate the agreement with Mutual of Omaha.

20              **2.    Requirement for Objective Medical Evidence**

21      Lawrence argues that Motorola improperly required objective medical evidence to

22  demonstrate disability because (1) one of his disabling conditions–chronic pain–could not

23  be demonstrated by objective medical evidence and (2) the word "may" allows the

24  Administrator to apply the Plan in an inconsistent manner. The Plan provides that the "Plan

25  Administrator, in its sole and complete discretion, may require objective evidence of a

26  Participant's Disability . . . ." The Plan explicitly excludes a number of illnesses from long-

27  term disability coverage, but there is no provision excluding employees who have pain

28  beyond what objective medical evidence can substantiate. Tr. at 1077-78.

Irrespective of whether chronic pain cannot always be established by objective medical evidence, the Plan provides the administrator with the discretion to require objective medical evidence in some situations. Even though Lawrence may be unhappy that the Administrator required objective medical evidence in his case, the language of the Plan provides the Administrator with the ability to do so. Therefore, the fact that the Administrator required objective medical evidence does not evince a conflict of interest.

Lawrence has not cited any cases supporting the proposition that requiring objective medical evidence, when the plan plainly allows for the requirement of such evidence, demonstrates a conflict of interest. However, the reliance on objective medical evidence and the failure to define objective medical evidence may be relevant to whether Motorola erroneously decided Lawrence's claim. *See Duncan v. Continental Cas. Co.*, 1997 U.S. Dist. LEXIS 1582, *18 (N.D. Cal. 1997) ("Continental's denial of Duncan's policy was based on a limiting definition ("objective medical evidence") that neither appeared in nor was defined by the policy.").

### 3. Motorola's "Flip-Flopping"

Lawrence argues that Motorola's decisions to issue benefits and then discontinue benefits demonstrates Motorola's conflict of interest. Motorola asserts that Lawrence failed to qualify for long-term disability because he failed to provide documentation of a continuing disability. In order to receive disability benefits, the Plan requires:

> During this time of disability the participant cannot be engaged in his or her usual and customary occupation, and must be under the regular care and attendance (no less than one visit in a consecutive thirty (30) day period unless otherwise waived by the Plan Administrator) of a Physician qualified to treat the disabling condition and to determine functional abilities of the Participant as it applies to his or her occupation and activities of daily living.

A.R. at 1050.

As stated above, Lawrence initially received long-term benefits between October 2000 and December 2000. In early 2001, Motorola denied Lawrence's claim for long-term disability benefits because Dr. Siegel, a CORE physician, spoke with Dr. Wolfley, Lawrence's treating physician, and concluded that Lawrence was not disabled. DSOF at ¶

17.  In his report, Dr. Siegel noted that Dr. Wolfley was "unable to support total disability from any occupation at this time." Tr. at 444.  Lawrence appealed the denial, and submitted the opinions of Dr. Wolfley, Dr. Goodman, and Dr. Gough, each of whom opined that Lawrence was disabled.  On March 8, 2002, Motorola reinstated Lawrence's benefits.  TR. at 671.

On January 14, 2002, Motorola again denied Lawrence's claim.  Specifically, Motorola stated that Lawrence had failed to submit documentation establishing his continuing disability.  DSOF at ¶ 18.  Motorola specified the procedures Lawrence needed to follow for reinstatement.  Tr. at 547.  On January 21, 2002, Motorola reinstated Lawrence's benefits through August 8, 2002, because Lawrence had provided Motorola with documentation of continuing disability.  Tr. at 540.

On September 19, 2004, Motorola sent Lawrence a letter stating that, based on clinical information from Dr. Gough, Lawrence's long-term disability benefits would be extended from September 1, 2002 to September 11, 2002.  On September 24, 2002, Motorola sent Lawrence a letter stating that in order to continue receiving long-term disability benefits beyond September 11, 2002, Lawrence needed to fill out two forms and also submit documentation from his doctors. Tr. at 494.  On November 12, 2002, Motorola approved Lawrence's claim from September 11, 2000 until December 1, 2002.  Lawrence never received a letter that his disability was extended beyond the December 1, 2002 date.  However, on January 15, 2003, Motorola denied Lawrence's claim based on a review of the records submitted to the administrator and Lawrence's failure to attend two scheduled IMEs.

Whether the final denial was an abuse of discretion on the merits of the claim is a different matter, but this history of actions does not show a conflict of interest.  There is no evidence establishing that Motorola improperly denied and reinstated Lawrence's benefits.  At all times, Motorola appeared to have reasons supporting its decisions.  Both the January 2001 and January 2002 benefit denials were based on Lawrence's failure to submit medical documentation and a conversation that a CORE doctor had with one of Lawrence's treating physician.  On September 24, 2002, Motorola asked Lawrence to establish disability.  There

1   was nothing improper about this request, as Motorola was entitled to request that Lawrence

2   continue to establish a disability.   Lawrence then received benefits until January 14, 2003.

3   **IV.     Conclusion**

4          Lawrence has failed to demonstrate that Motorola breached its fiduciary duty and that

5   de novo review should apply.  Abuse of discretion is therefore the proper level of review for

6   determining whether Motorola erred in concluding that Lawrence was not disabled.

7          IT IS THEREFORE ORDERED that Plaintiff's Motion for Review De Novo, Doc.

8   # 36, is denied.

9          IT IS FURTHER ORDERED that the parties brief the merits of the case under the

10  abuse of discretion standard of review, submitting separate statements of fact following the

11  procedure prescribed in LRCiv 56.1(a), pursuant to the following schedule:

12         1.      By June 16, 2006: Plaintiff's opening brief.

13         2.      By July 17, 2006: Defendant's answering brief.

14         3.      By August 1, 2006: Plaintiff's reply brief.

15  The court does not contemplate extending this schedule.

16          IT IS FURTHER ORDERED setting oral argument on the merits of the case on

17  August 18, 2006, at 1:30 p.m.

18         DATED this 16th day of May 2006.

19

20

21         _____

22                      Neil V. Wake
              United States District Judge

23

24

25

26

27

28